UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANN M. LEITCH and
DAVID C. LEITCH,

    Plaintiffs,                                              Case No. 1:12-cv-789

vs.                                                        Weber, J.
                                                            Bowman, M.J.

WARREN COUNTY, OHIO, *et al.*,

    Defendants.

### REPORT AND RECOMMENDATION

This civil action is before the Court on Defendants' motions for judgment on the pleadings and motions for summary judgment. (Docs. 30, 31, 32, 33). The motions have been referred to the undersigned for initial consideration and a report and recommendation. 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, I now recommend that Defendants' motions be granted and this case be closed.

**I.    Background and Facts**:

Plaintiffs bring this civil rights action under 42 U.S.C. § 1983 and Ohio law against the County of Warren, Ohio and numerous employees thereof. Plaintiffs' claims arise out of the seizure, arrest and prosecution of Plaintiff Ann Leitch for aggravated menacing of Warren County Children Services and its employees. Plaintiffs are alleging deprivations of their Constitutional rights under the First and Fourth Amendments to the United States Constitution. (Doc. 1).

The named defendants include:

County of Warren, a political subdivision within the State of Ohio, which
includes Warren County Children Services;

1

>Patricia L. Jacobs, Executive Director of Warren County Children Services;
>
>Shawna Barger, supervisor of Warren County Children Services;
>
>Nakia Bedgood, foster/adoption supervisor of Warren County Children Services;
>
>David R. Gully, Administrator for Warren County;
>
>Tom Naumovski, a deputy sheriff of Warren County; and
>
>Larry Sims, Sheriff of Warren County.

(Doc. 1).

According to the Complaint, in February 2011, Plaintiffs were serving as foster parents to an infant child placed with them by Warren County Children Services. On February 28, 2011, employees of Warren County Children Services arranged to pick up that child for visitation with the biological father. Prior to that date of visitation, Plaintiff Ann Leitch told the employees of Warren County Children Services that the carseat provided was too small for the infant and was not being used consistently with the manufacturer's recommendations. When the Warren County Children Services' Aide arrived at Plaintiffs' residence, Plaintiff Ann Leitch threatened to call the police and refused to permit the child to be transported in the allegedly unsafe car seat.

Thereafter, Plaintiffs allege that Defendants Jacobs, Barger and Bedgood placed misleading and negative information into State Automated Child Welfare Information System (hereafter referred to as "SACWIS") relating to obtaining the foster child from Plaintiff Ann Leitch on February 28, 2011. Namely, that Plaintiff Ann Leitch was threatening towards a case aide, who was denied control of a foster child, during which it took the aid of three different employees of Warren County Children's Services

2

including Defendant Barger to remove the child. The complaint further alleges that Defendants made misleading statements suggesting that Plaintiff Ann Leitch was stalking the biological father of a foster child that had been in her care.

On April 12, 2011, Defendants Jacobs, Bedgood and Gully recommended to Ohio Department of Jobs & Family Services that there be a revocation of the certification of the foster home license for Plaintiffs. (Doc. 42, Ex. C). On September 8, 2011, Ohio Department for Jobs & Family Services rejected Warren County's recommendation to revoke the foster care certification.

Plaintiffs then sought to renew their foster care certification. On April 4, 2012, Defendants Jacobs and Bedgood advised Plaintiffs that they must first submit to a psychological examination and agree to release all information obtained by the examining psychologist to Warren County. Plaintiffs objected to such examination.

Thereafter, the evidence of record establishes the following:

On the morning of May 11, 2012, Deputy Naumovski received information about a threat made to Warren County Children Services' employees. (Doc. 30, Ex. A).[1] Deputy Naumovski proceeded to Warren County Children Services' offices to investigate further.

Upon his arrival he spoke with Defendant Jacobs. Ms. Jacobs provided Deputy Naumovski with the factual background related to the threat. *Id.* She told Deputy Naumovski that on February 28, 2011 a Warren County Children Services' worker attempted to remove a 7 month-old infant from the custody of Ann Leitch who was acting as a foster parent for that infant. *Id.,* 2-3. The Warren County Children Services'

---

[1] Exhibit A is Deputy Naumovski's Affidavit with the following attachments: Deputy Naumovski's case report from May 11, 2012 which included Witness Statements from Patti Jacobs and Nakia Bedgood. (Doc. 30 Ex. A, 1-5).

3

worker was unable to gain custody of the child at that time due to Ann Leitch's threatening behavior. *Id.* Ms. Jacobs told Deputy Naumovski that later that day; three different employees from Warren County Children Services returned to Ann Leitch's residence and were eventually able to remove the infant who they found wrapped in a blanket in a car seat in the laundry room of Ann Leitch's house. *Id.*

Ms. Jacobs told Deputy Naumovski that Ann Leitch had been stalking the biological father of the infant and also stalking workers of Warren County Children Services. *Id.* According to Ms. Jacobs, Ann Leitch had sent numerous letters and packets to Judge Ruppert and Judge Powell with criminal histories and complaints regarding the biological father. *Id.* Ms. Jacobs also said that Ann Leitch informed her of Ann Leitch's knowledge of the location of the personal residencies of Warren County Children Services' employees, including Ms. Jacobs, along with other personal information. *Id.*

Ms. Jacobs told Deputy Naumovski that Ann Leitch's foster parent license was up for renewal on May 31, 2012 and that Ms. Jacobs informed Ann Leitch that this renewal process would require a psychological evaluation. Shortly after this determination and communication regarding the need for a psychological evaluation occurred, Ann Leitch telephoned Ms. Jacobs and struck up a conversation about a convention being held by the Attorney General regarding foster care issues. *Id.* Ann Leitch made a comment to Ms. Jacobs during the conversation that: "I hope nothing blows up." *Id.* Ms. Jacobs asked Ann Leitch what she meant by this statement and Ann M. Leitch replied "I meant I hope nothing blows up at the agency." *Id.* The telephone call ended shortly thereafter. This telephone conversation took place on April 20, 2012.

4

Defendant Nakia Bedgood heard the conversation between Ms. Jacobs and Ann Leitch because Ms. Jacobs took the call on speaker phone.

Deputy Naumovski took written statements from both Defendant Jacobs and Defendant Bedgood that detailed the threatening comments.  (*Id*. at 4, 5).  Deputy Naumovski attempted to contact Ann Leitch.  When he arrived at her residence he noted a vehicle in the driveway and that all windows were closed with the curtains drawn. He knocked and rang the doorbell several times with no answer at the door. *Id*., 3.  He also had the Warren County Communication Center attempt to call Ann M. Leitch at the residence without success*. Id.*

Deputy Naumovski met with the Warren County Prosecutor's office and described the incident to Investigator Devillus. Investigator Devillus in turn spoke with one of the Assistant Prosecutors in the office and was informed by that Assistant Prosecutor that there was sufficient information to file charges.   *Id.*  Based on the totality of the facts presented by Defendant Jacobs and Bedgood and the advice of the Warren County Prosecutor's office, Defendant Naumovski filed a charge against Ann Leitch for aggravated menacing under Revised Code § 2903.21.   *Id.*  A warrant was issued for Ann M. Leitch's arrest by the Warren County Municipal Court Clerk's office. Based on this warrant, Ann Leitch was arrested and briefly detained. On June 13, 2012, the City of Lebanon Assistant Prosecutor dismissed the charge filed against Ann Leitch without prejudice.

Thereafter, Plaintiffs' filed the instant action against Defendants pursuant to 42 U.S.C. § 1983 alleging violations of their First and Fourth Amendments, as well as state law claims for intentional infliction of emotional distress, negligent infliction of emotional

5

distress, false light, slander, invasion of privacy, malicious prosecution, libel, retaliation, tortious interference with foster care relationships, tortious interference with adoption relationships, tortious interference with business and breach of contract.

## II. Motions for Judgment on the Pleadings (Docs. 31, 32)

Defendants Barger, Bedgood, Gully, Jacobs, Naumovski, Sims and Warren County Children's Services now move for judgment on the pleadings on Plaintiffs' first cause of action. (Docs. 31, 32). Plaintiffs' first cause of action asserts that Defendants "acted under color of state law with reckless disregard of the constitutionally guaranteed rights of the First Amendment of the United States Constitution afforded to Plaintiff Ann Leitch." (Doc. 28 at ¶ 37). For the reasons explained below, the undersigned finds that Plaintiffs have failed to state a claim for relief based on a violation of Ann Leitch's constitutional rights under the First Amendment.

### A. Standard of Review

Rule 12(c) requires application of the same legal standard used to evaluate a defendant's motion to dismiss under Rule 12(b)(6). Thus, a Court must construe the pleadings in the light most favorable to the non-moving party, making all reasonable inferences in the favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). The Court is not required to accept as true mere legal conclusions unsupported by factual allegations. Rather, a plaintiff must "plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 668, 129 S.Ct. 1937, 1949). To obtain judgment on the pleadings, the record must

6

show that "no genuine issue of material fact exists" and Defendants must show they are "entitled to judgment as a matter of law." See Tucker v. Middleburg–Legacy Place, 539 F.3d 545, 549 (6th Cir.2008) (quoting JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 582 (6th Cir.2007)).

      B. *Defendants Motions for Judgment on the Pleadings are Well-taken*

As detailed above, Plaintiffs contend that after Ms. Leitch refused to permit the child to be transported in an allegedly unsafe car seat, the employees of Warren County Children Services placed negative information into the state automated child welfare information system (SACWIS) related to this incident and recommended that their foster care license be revoked. As such, Plaintiffs' allege that Defendants Jacobs, Bedgood and Gully, through their employment, retaliated against them by demanding that they be required to be psychologically tested for the renewal of their license with Warren County Children Service. (Doc. 1). Plaintiffs' maintain that this adverse action was motivated at least in part as a response to the exercise of Plaintiff's constitutional rights. Thus, Plaintiffs' argue that there is a causal connection between the exercise of free speech (their purported complaints about the alleged improper carseat) and the asserted adverse action. Plaintiff's allegations, however, fail to state a claim for relief.

In the Sixth Circuit, a Plaintiff alleging First Amendment retaliation "must prove that 1) he engaged in protected conduct, 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct, and 3) the adverse action was taken at least in part because of the exercise of the protected conduct." *Siggers-El* v. Barlow, 412 F.3d 693, 699 (6th Cir. 2005) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 393 (6th Cir.1999) (en banc )).

7

Defendants contend that Plaintiffs' conclusory allegation that "there is a causal connection between the exercise of free speech, [which is] a protected activity, and the asserted adverse action" is not sufficient to pass the test set forth in *Iqbal*. In this regard, Defendants maintain that the alleged retaliatory conduct (*i.e.* a recommendation to revoke Plaintiffs' license and requested psychiatric evaluation) were in fact, reasonable administrative actions taken after Plaintiff Ann Leitch refused to return a foster child placed with her to Warren County Children Services' for a scheduled visit with his biological father. The undersigned agrees.

As noted by Defendants, "…[F]oster parents have no right to custody under Ohio law." *In re McDaniel*, 2004 Ohio 2595, 2004 Ohio App. LEXIS 2305 (11th App. Dist.), paragraph 36. Notably, *In Renfro v. Cuyahoga County Department of Human Services*, 884 F.2d 943, 944, U.S. App. LEXIS 13885 (6th Cir. 1989), the Sixth Circuit stated:

> The nature of the foster care relationship is distinctly different from that of the natural family; namely, it is a temporary arrangement created by state and contractual agreements.
> * * *
> Under Ohio law, the rights and limitations of the foster care relationship are clearly defined. Foster parents have no mechanism to challenge the removal of a foster child from their care; they have no statutory right to a hearing either before or after the child has been removed; nor are they entitled to a written explanation for the agency's action or an appeal. The temporary nature of the foster care relationships provides sufficient notice to all participants that their rights are limited.

Plaintiffs fail to allege any facts that support their allegation that the motivation of Defendants was to retaliate against them for exercising their Free Speech rights. To the contrary, the evidence establishes that Defendants acted reasonably in light of Plaintiff Ann Leitch refusal to permit Warren County Children's Services from transporting the foster child for a visit with the biological father. Accordingly, Defendants are entitled to

8

judgment as a matter of law with respect to Plaintiffs first cause of action.

### III. Defendants' Motions for Summary Judgment (Doc. 30, 33)

Defendants Warren County Children Services, David Gully, Sheriff Larry Sims and Deputy Thomas Naumovski contend that there are no genuine issue of material fact and they are entitled to summary judgment as a matter of law on Plaintiffs' causes of action for alleged violations of Plaintiffs' constitutional rights, intentional infliction of emotional distress, malicious prosecution. Defendants further assert that Deputy Naumovski is entitled to qualified immunity. Plaintiff maintains, however, that genuine issues of material fact exist, thereby precluding summary judgment.

*A. Summary Judgment Standard of Review*

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations. After a moving party

9

has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

To demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted). It is the Plaintiff's burden to point out record evidence to support her claims. "[T]he Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin County Bd. Of Com'rs*, 637 F. Supp.2d 561, 576 (S.D. Ohio 2009) (citing *Williamson v. Aetna Life Ins. Co.,* 481 F.3d 369, 379 (6th Cir. 2007)).

*B. Qualified Immunity*

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001). The doctrine of qualified immunity is intended to balance the following competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231.

Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). *See also Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008). Qualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 555 U.S. at 231.

Once a defendant raises a qualified immunity defense, the plaintiff must satisfy a two pronged analysis: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right, and (2) if a violation could be made out on a favorable view of the parties' submission, was the right clearly established at the time of the injury? *Saucier v. Katz,* 533 U.S. 194, 201 (2001). In its discretion, the court may initially address either of these

questions in light of the circumstances of the particular case before it in resolving an officer's qualified immunity claim. *Pearson,* 555 U.S. at 236-37.

Plaintiff bears the burden of showing that a right is clearly established. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009). Defendants, however, bear the burden of showing that the challenged actions were objectively reasonable in light of the law existing at the time. *Id.*

In determining whether a right is "clearly established" for purposes of the qualified immunity inquiry, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier*, 533 U.S. at 202. This question must be answered "in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier,* 533 U.S. at 201). The unlawfulness of the officer's conduct must be apparent in light of pre-existing law. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "If officials of reasonable competence objectively could disagree on the law, immunity should be recognized." *Cameron v. Seitz,* 38 F.3d 264, 272 (6th Cir. 1994) (citing *Mumford v. Zieba,* 4 F.3d 429, 432 (6th Cir. 1993)).

Summary judgment based on qualified immunity is not appropriate if there is a factual dispute or genuine issue of material fact "involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992).

C. *Analysis relating to Plaintiff's Federal Claims*

To succeed on a claim for a violation of § 1983, the plaintiff must show that (1) a

person (2) acting under color of law (3) deprived him of his rights secured by the United States Constitution or its laws. *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir.2001). As noted above, Plaintiffs' second cause of action asserts that Defendants illegally seized, arrested and wrongfully prosecuted Ann Leitch in violation of her Fourth Amendment rights.

"By virtue of its incorporation into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." *Baker v. McCollon*, 443 U.S. 137, 142-43 (1979). Thus, arrest, even without a warrant, does not violate the Fourth Amendment if probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law. *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). The Supreme Court has defined "probable cause" as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* at 37; *See also Gerstein v. Pugh*, 420 U.S. 103, 113-14 (1975) ("a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime"); *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 305 (6th Cir. 2005) (An officer has probable cause when he discovers reasonably reliable information that a suspect has committed a crime) (internal citations omitted). Thus, in order to establish a violation of her Fourth Amendment rights, Plaintiff Ann Leitch must show that the Officer lacked probable cause for her seizure, arrest and subsequent prosecution.

As detailed above, Plaintiff Ann Leitch was charged with aggravated menacing in

violation of O.R.C § 2903.21, which states in pertinent part as follows:

> (A) No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family.
>
> (B) Whoever violates this section is guilty of aggravated menacing…. If the victim of the offense is an officer or employee of a public children services agency… and the offense relates to the officer's or employee's performance or anticipated performance of official responsibilities or duties, aggravated menacing is a felony of the fifth degree….

Based on the totality of the information in the possession of Deputy Naumovski at the time the aggravated menacing charge was filed against Plaintiff Ann Leitch, Defendants contend that he had more than adequate probable cause to file a criminal charge for the offense of aggravated menacing. Plaintiffs, however, assert that Defendants cannot claim they had "probable cause" to arrest Leitch, as there was no observation of a crime taking place in their presence and the alleged telephone threat occurred two weeks before the charges were filed against Plaintiff Ann Leitch. Plaintiffs further purport to question the credibility and/or truthfulness of the statements made by Ms. Jacob and Ms. Bedford to Deputy Naumonski. Plaintiffs' unsupported contentions lack merit.

The evidence establishes that on the morning of May 11, 2012, Deputy Naumovski received information about a threat made to Warren County Children Services' employees. Deputy Naumovski proceeded to the office of Warren County Children Services' to investigate further. Upon arrival, he spoke with Warren County Children Services' Director Patti Jacobs. Ms. Jacobs informed Deputy Naumovski about the February 28, 2011 incident, whereupon a Warren County Children Services'

worker was unable to gain custody of the foster child in Plaintiff's Ann Leitch's care due to Ms. Leitch's threatening behavior.

Ms. Jacobs also told Deputy Naumovski that Ann Leitch had been stalking the biological father of the infant and also stalking workers of Warren County Children Services. Ms. Jacobs further informed Deputy Naumovski about the phone call she had with Plaintiff on April 20, 2012, wherein Ms. Leitch stated in that conversation that: "I hope nothing blows up." (Doc. 30, Ex. A). Ms. Jacobs asked Ann Leitch what she meant by this statement and Ann Leitch replied "I meant I hope nothing blows up at the agency." *Id.* Deputy Naumovski then took written statements from both Defendant Jacobs and Defendant Bedgood detailing Ms. Leitch's threatening comments and improper behavior. *Id.*

Deputy Naumovski then attempted to contact Ms. Leitch at her home and by phone. No one answered the door or the phone at the Leitch home. (Doc. 30, Ex. 1). Thereafter, Deputy Naumovski met with the Prosecutor's office and informed them of the incident [involving the threats issued by Plaintiff Ann Leitch]. Investigator DeVillus spoke to one of the Prosecutors and told Naumovski that there was enough information to file a warrant. Defendant Naumovski filed a charge against Ann Leitch for aggravated menacing under Revised Code § 2903.21. A warrant was issued for Ann Leitch's arrest by the Warren County Municipal Court Clerk's office on May 11, 2012. Based on this warrant, Ann Leitch was arrested and briefly detained. On June 13, 2012, the City of Lebanon Assistant Prosecutor dismissed the charge filed against Ann Leitch without prejudice.

As noted above, a probable cause determination is made based upon the facts

and circumstances within the officer's knowledge that a crime has been committed. Thus, an officer does not have to "observe" a crime to have probable cause that such crime was committed. To the contrary, the Sixth Circuit has explained, "probable cause is based on the totality of the circumstances; it is a practical, non-technical conception that deals with the factual and practical considerations of everyday life." *Abboud*, 438 F.3d at 571. Here, the undersigned finds that the evidence outlined above establishes that Deputy Naumovski had reasonably reliable information to believe that Plaintiff Ann Leitch's threatening behavior caused Warren County Children Services and its employees to believe that Plaintiff could cause serious physical harm to their persons or property. As such, based on the facts and circumstances before the Court, the undersigned finds that Deputy Naumovski had probable cause to believe the offense of aggravated menacing had been committed by Plaintiff Ann Leitch. *See Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 305 (6th Cir. 2005).

Moreover, Plaintiffs have offered no evidence in support of their assertion that the Court should question the credibility of the statements made by Ms. Jacobs and Ms. Bedford relating to Plaintiff Ann Leitch's threats. To the contrary, the Director of Warren County Children Services and one of her employees constitute reasonably trustworthy sources of information. *See Ahlers v. Schebil*, 188 F.3d 365,370 (6th Cir.1999) (victim's accusation alone could have provided a sufficient basis for a finding of probable cause). *See also Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 638 (6th Cir. 2004) (The question is not whether [Plaintiff] made these threats but whether the defendants had probable cause to believe that he had made them). *See also Criss v. City of Kent*, 867 F.2d 259, 262 & n. 1 (6th Cir.1988) (an arrest grounded in probable

16

cause does not become invalid merely because the State chooses not to prosecute the individual or a jury opts for acquittal). Accordingly, the undersigned finds that probable cause existed to arrest and prosecute Plaintiff Ann Leitch for aggravated menacing. As such, Plaintiffs claims for violations of Ann Leitch's Fourth Amendment rights fail as a matter of law.

Even assuming that Plaintiffs' have established a question of fact relating to their Fourth Amendment claim(s), Defendants are nonetheless entitled to qualified immunity because Plaintiffs' have not shown that Defendant Naumovski acted unreasonably. To the contrary, the evidence establishes that Defendant Naumovski met with Ms. Jacobs, Ms. Bedford, attempted to speak with Plaintiff and then sought advice from the Prosecutor before determining that probable cause existed to believe that the offense of aggravated menacing had been committed by Plaintiff Ann Leitch. As explained above, qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). Viewing the facts in favor of Plaintiffs, there is no evidence that Defendants knowingly violated the law.

Additionally, Plaintiffs' official capacity claims against Warren County and Sherriff Sims also fail as a matter of law. In *Monel v. Dept. of Social Services*, the Supreme Court held that municipalities (or its agencies) cannot be liable under 1983 on a *respondeat superior* theory, but can be liable if the municipality maintains unconstitutional or illegal policies. Notably, Plaintiffs contend that the Warren County and Warren County Children Services policymakers ratified Defendants Jacobs, Barger,

17

Bedgood, Naumovski, Gully and Sim's actions by failing to stop the harassment suffered by Ann Leitch. However, because there is no *respondeat superior* liability under Section 1983, to establish an official capacity claim, Plaintiff must show that the law enforcement entity's policy or custom caused the violation of the Plaintiff's federal or constitutional rights. *Hafer v. Melo*, 502 U.S. 21, 25, (1991). In order to establish liability for Defendant Warren County and Sheriff Sims under Section 1983, Plaintiffs must show that the County's policy (or lack thereof) was a "moving force" in the deprivation of Plaintiffs' rights and arose from "deliberate indifference" to Plaintiffs' rights. *See Doe v. Claiborne County Tennessee*, 103 F.3d 495, 508 (6th Cir. 1996). Plaintiffs asserting a Section 1983 claim on the basis of a county policy have the burden to "identify the policy, connect the policy to the [county] itself and show that the particular injury was incurred because of the execution of that policy." *See Garner v. Memphis Police Dep't.*, 8 F.3d 358, 364 (6th Cir. 1993, cert. denied 510 U.S. 1177, 114 S.Ct. 1219 (1994)).

Plaintiffs' contend that Defendant Warren County and Warren County Children Services had knowledge of the grievance procedures Plaintiffs had initiated and prevailed to save revocation of their license, and the efforts of the Defendants to block their renewal by requiring a forensic psychological examination. (Doc.39 at 15-16). Such unsupported conclusory allegations, however, do not identify any specific policy, procedure or custom that was the "moving force behind any alleged constitutional evaluation." Accordingly, to the extent that Plaintiffs are asserting claims against Defendants in their official capacities, such claims fail as a matter of law.

D.	*Plaintiff's State Law Claims*

Finally, the Court should decline to exercise pendent jurisdiction over Plaintiffs claims that the actions of Defendants violated Ohio state law[2], because Plaintiffs fail to state a viable federal claim.  See *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).  Thus, any state law claims should be dismissed without prejudice for lack of jurisdiction.

**III. Conclusion**

For these reasons, **IT IS THEREFORE RECOMMENDED THAT** Defendants' motions for judgment on the pleadings (Docs. 31, 32) should be **GRANTED**; Defendants' motions for summary judgment (Docs. 30, 33) be **GRANTED** and this case is therefore **TERMINATED** on the active docket of the Court.

                                           *s/ Stephanie K. Bowman*
                                           Stephanie K. Bowman
                                           United States Magistrate Judge

---

[2] Plaintiff's remaining state law claims are: negligent infliction of emotional distress, intentional infliction of emotional distress, false light, slander, invasion of privacy, libel, retaliation, tortious interference with foster care relationships, tortious interference with adoption relationships, tortious interference with business, and breach of contract.  (Doc. 28).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANN M. LEITCH and
DAVID C. LEITCH,

    Plaintiff,

vs.

WARREN COUNTY, OHIO, *et al.*,

    Defendants.

Case No. 1:12-cv-789

Weber, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).